UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARL DaCOSTA,

                              Plaintiff,

v.                                                      3:19-CV-0913
                                                        (TJM/ML)

WILMINGTON TRUST, N.A.
not in its Individual capacity but
Solely as successor Trustee to
Lenham XS Trust mortgage
Pass-through certificates, Series
2006-5; DIANA SEARCH, Esq.;
MAUREEN A. BYRNE, Esq.; and
McCALLA RAYMER LEIBERT
PIERCE, LLC,

                              Defendants.
_____

APPEARANCES:                                                  OF COUNSEL:

CARL DaCOSTA
  *Pro Se*
21 Meadow Lane
Greene, New York 13778

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

      The Clerk has sent this *pro se* complaint together with an application to proceed *in forma pauperis* filed by Carl DaCosta ("Plaintiff") to the Court for review. (Dkt. Nos. 1 and 2.) For the reasons discussed below, I deny Plaintiff's *in forma pauperis* application (Dkt. No. 2), recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in part with leave to amend and accepted in part for filing.

I.  **ALLEGATIONS OF THE COMPLAINT**

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that defendants Wilmington Trust, N.A., not in its Individual capacity but solely as successor Trustee to Lehman XS Trust mortgage Pass-through certificates, Series 2006-5 ("Wilmington"), Diana Search, Esq. ("Search"), Maureen A. Byrne, Esq. ("Bryne"), and McCalla Raymer Leibert Pierce, LLC ("McCalla") (collectively "Defendants") engaged in an illegal foreclosure and holdover eviction. (*See generally* Dkt. No. 1.)

More specifically, Plaintiff alleges that his residential property located at 21 Meadowbrook Lane, Greene, New York 13778 (the "Property") was foreclosed illegally and sold to Wilmington at public auction on January 23, 2019. (*Id.*) Plaintiff alleges his signature was forged on the following three documents all related to the Property: (1) a Mortgage dated November 2, 2005 (*id.* at 8, 11; Dkt. No. 1, Attach 1 at 13-14); (2) a Note dated November 2, 2005 (Dkt. No. 1 at 8, 11; Dkt. No. 1, Attach 1 at 15-16); and (3) a loan modification agreement dated January 1, 2012 (Dkt. No. 1 at 8, 11; Dkt. No. 1, Attach. 1 at 11-12).

In addition, Plaintiff alleges that in 2014, two payments were made to satisfy the "alleged loan: One in the amount of $290,000.00 and the second one in the amount of $883.36." (Dkt. No. 1 at 4; Dkt. No. 1, Attach. 2 at 2-9.) Plaintiff alleges that despite this satisfaction of the loan, based on "fraudulent tactics of the defendants to create documents" (*id.* at 8) in 2019, the Property was "illegally" foreclosed by Defendants Wilmington, Search, and McCalla (*id.* at 18), and he was improperly evicted from the Property (*id.* at 12, 19).

---

[1]  The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Plaintiff's Complaint includes several attachments including, *inter alia*, (1) a warrant of eviction holdover issued by the State of New York Village of Green Court (Dkt. No. 1, Attach. 5 at 2-3), (2) a holdover judgment issued by the State of New York Village of Green Court (*id.* at 4-5), and (3) a Referee Deed for the Property dated January 23, 2019, between "grantor" Byrne in her capacity as referee, and "grantee" Wilmington (*id*. at 19, 29).

Based on these allegations, Plaintiff asserts the following six causes of action: (1) illegal foreclosure ("First Claim"); (2) proof that account has been paid and satisfied in violation of 15 U.S.C. § 1692(e) ("Second Claim"); (3) misrepresentation of material facts in violation of fair debt collection practices ("Third Claim"); (4) breach of contract pursuant to New York common law ("Fourth Claim"); (5) the creation of forged and fraudulent documents and the fraudulent conveyance of illegal documents in court to steal Plaintiff's home ("Fifth Claim"); and (6) wrongful foreclosure ("Sixth Claim"). (*See generally* Dkt. No. 1.)

Plaintiff seeks actual damages, "statutory damages," punitive damages, and "damages for emotional distress, loss of income, [and] family disruption." (*Id.* at 9.) In addition Plaintiff is "requesting for a stay of the sale and eviction[.]" (*Id*. at 8.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[2] Pursuant to 28 U.S.C. § 1915,

---

[2] The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit

3

where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). The Court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.l. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In support of an IFP application, 28 U.S.C. § 1915 requires that a plaintiff submit an affidavit reflecting all of his assets. 28 U.S.C. § 1915(a)(1). Without the submission of a completed financial affidavit, a plaintiff's application is incomplete, and this defect alone warrants denial of the IFP application. *See, e.g., United States v. Copen*, 378 F. Supp. 99, 103 (S.D.N.Y. 1974) ("Leave to proceed in forma pauperis may be obtainable only upon submission

---

that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4

by the party of an affidavit made as required by [28 U.S.C. § 1915]."); *accord, Bey v. Syracuse Univ.*, 155 F.R.D. 413, 414 (N.D.N.Y. 1994) (Scullin, J.).

In this case, Plaintiff's application contains some details concerning his financial status; for example, he indicated that he is employed and earns $1,800.00 but does not indicate over what pay period that income is earned. (Dkt. No. 2 at 1.) Plaintiff also indicated that he owns a 2002 Saab vehicle valued at $1,200.00 and a 2005 Volvo vehicle valued at $2,000.00. (*Id.* at 2.) Plaintiff's application included only a line in the space for answers to the following two questions: (1) "Any housing, transportation, utilities, or loan payments, or other regular monthly expenses (describe and provide the amount of the monthly expense)"; and (2) "Any debts or other financial obligations (describe the amounts owed and to whom they are payable)." (*Id.*) Without an affidavit detailing the basis for Plaintiff's claim that he is unable to pay the applicable filing fee, the Court cannot make a meaningful assessment concerning whether he should be granted IFP status.

At this juncture, the Court is unable to conclude that Plaintiff is indigent and thus entitled to IFP status.[3]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that the Court lacks subject

---

[3]  Factors potentially relevant to IFP status include marital status and number of dependents, place of residence, nature of employment, earning potential, unencumbered assets, possible aid from friends and relatives and/or charities, the particular cost relative to the applicant's financial needs. *In re Koren*, 176 B.R. 740, 744 (E.D. Pa. 1995).

matter jurisdiction to address certain claims asserted in Plaintiff's Complaint, I recommend that the Court dismiss those claims. *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter based on the *Rooker-Feldman* doctrine); *Talley v. LoanCare Serv., Div. of FNF*, 15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review, action challenging state court mortgage foreclosure judgment pursuant to the *Rooker-Feldman* doctrine).

"A court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction." *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)). "Before deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter." *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved . . . before proceeding to the merits.").

The *Rooker-Feldman* doctrine recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). Recognizing that many courts have applied *Rooker-Feldman* in a manner which effectively expands its boundaries well beyond those envisioned in the two seminal decisions, the Supreme Court emphasized the narrow limits of the rule in *Exxon Mobil Corp. v. Saudi Basic Indu. Corp.*, observing that "[t]he *Rooker-Feldman* doctrine . . . is

confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 283-284 (2005). The Court distinguished such rare situations, which implicate a district court's subject matter jurisdiction, from the more common instance where a federal plaintiff does not seek to undo a state judgment, but rather "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party[.]" *Id.* at 284. The Court noted that in cases involving parallel or related state and federal cases which do not include a direct challenge of a state court determination, other tenets, involving the non-jurisdictional law of preclusion, as governed in part by the Full Faith and Credit Act, 28 U.S.C. § 1738, and the judicially created rules of abstention, are appropriately consulted. *Id.* at 284 (citation and internal quotation marks omitted); *compare Vargas v. The City of New York*, 377 F.3d 200, 205 (2d Cir. 2004) (holding that the *Rooker-Feldman* doctrine was not confined to claims seeking direct review of judgments of state courts but extended also to claims that could have been brought in state court and were inextricably intertwined with earlier state court determinations). In short, the Court's decision in *Exxon Mobil* effectively laid to rest the suggestion asserted by many courts–including the Second Circuit–that the *Rooker-Feldman* doctrine and state court preclusion law are co-extensive, pointedly noting that the canon "does not otherwise override or supplant preclusion doctrine[.]" 544 U.S. at 284.

"Where constitutional claims are not raised in the state court proceeding, there is no federal court subject matter jurisdiction if the claim is 'inextricably intertwined' with the state court judgment." *McKithen,* 481 F.3d at 96 (citing *Dist. of Colombia Court of Appeals v. Feldman*, 420 U.S. 462, 483 (1983)). In the Second Circuit, there are four requirements for the

7

application of *Rooker-Feldman*: (1) the federal-court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state-court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state-court judgment must have been rendered before the district court proceedings commenced. *McKithen*, 491 F.3d at 97. "Where all four elements are met, a district court must dismiss for lack of subject matter jurisdiction." *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 274 (S.D.N.Y. 2018). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Holblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

"A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.'" *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97 (quoting *Hoblock*, 422 F.3d at 83).

IV. ANALYSIS

Construed liberally, Plaintiff's Complaint claims of a pattern of fraudulent activity involving (1) the initial loan agreement with Ark Mortgage, Inc., (2) the loan modification agreement with Aurora Bank FSB, (3) the purportedly false assignment to Nationstar, (4) the allegedly fraudulent judgment in the foreclosure proceeding, (5) the allegedly unlawful holdover

and eviction action prosecuted by Wilmington, and (6) the transfer of the Property to Wilmington[4]–all of which is "inextricably intertwined" with the state court foreclosure action.[5]

Here, the first and fourth "procedural" requirements for application of the *Rooker-Feldman* doctrine are clearly met. *Gifford*, 2019 WL 2912489, at *6. Plaintiff lost in both the foreclosure and holdover eviction proceedings. (Dkt. No. 1, Attach. 5 at 2-5, 19, 29.) This action was commenced on July 26, 2019, by the filing of Plaintiff's Complaint. (Dkt. No. 1.) The Property was sold at a foreclosure auction on September 29, 2017. (Dkt. No. 1, Attach. 5 at

---

[4] It is not clear whether the Property was transferred to Wilmington (Dkt. No. 1, Attach. 5 at 2-3), Nationstar (Dkt. No. 1 at 6), or JPMorgan Chase Bank, National Association (Dkt. No. 1, Attach. 5 at 4).

[5] *Gifford v. United N. Mortg. Bankers, Ltd.*, 18-CV-6324, 2019 WL 2912489, at *5 (S.D.N.Y. July 8, 2019) (citing *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010), *aff'd* 446 F. App'x 360 (2d Cir. 2011) (summary order)); *see Pharr v. Evergreen Garden, Inc.*, 123 F. App'x 420, 422-23 (2d Cir. 2005) (*Rooker-Feldman* doctrine bars "claims that are 'inextricably intertwined' with a state court decision"); *In re Lunn*, 16-CV-20163, 2016 WL 5349726, at *7 (W.D.N.Y. Sept. 23, 2016) (*Rooker-Feldman* doctrine barred plaintiff's claims that were predicated on "irregularities in recording the various assignments of [her] mortgage" which allegedly showed that "her mortgage loan lack[ed] a valid chain of mortgage and note ownership from the original lender to date" because such claims were caused by or arose out of a state court foreclosure judgment); *Anctil v. Ally Fin., Inc.*, 998 F. Supp. 2d 127, 132-34 (S.D.N.Y. 2014), *aff'd in part, rev'd in part on other grounds sub nom.*, 588 F. App'x 66 (2d Cir. 2015) (holding that the *Rooker-Feldman* doctrine barred plaintiff's claims, which, asserted that transfers of mortgages were illegal, chains of titles to mortgages were broken, the foreclosing entities initiated the foreclosure proceedings using false and misleading documents and did not hold the mortgages, thus rendering the foreclosures invalid, even where "[d]efendants' allegedly fraudulent *conduct* may have preceded the entry of the foreclosure judgments, but the *injury* complained of–loss of [p]laintiffs' homes–was effected by the judgments, not by any previous direct actions taken by [d]efendants" (emphasis in original)); *Done v. Option One Mortg.*, 09-CV-4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011) (*Rooker-Feldman* doctrine barred plaintiff's claims that were "entirely dependent on the loan in question being invalid, which ha[d] already been resolved against plaintiff in the state court [foreclosure] proceeding"); *see also Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 246-47 (D. Conn. 2016) ("*Rooker-Feldman* requires the federal court plaintiff to have been a party to the state court proceeding, but it does not require the federal court defendants to have been party to the state court proceedings.")

19, 29.) Judgment was entered in the holdover eviction proceeding on June 26, 2019. (Dkt. No. 1, Attach 5 at 2-5.)

With respect to the second and third "substantive" requirements of the *Rooker-Feldman* doctrine, an individual analysis of each of Plaintiff's claims is required to determine whether Plaintiff alleges injuries caused by state court judgment and whether adjudication of Plaintiff's claims would invite a review and rejection of that judgment. *Gifford*, 2019 WL 2912489, at *6.

### A. First, Fifth, and Sixth Claims (Illegal and Wrongful Foreclosure)

In general, Plaintiff asserts three grievances: that (1) that the original mortgage, note, and loan modification agreement were forged (Dkt. No. 1 at 14; Dkt. No. 1, Attach. 1); (2) that Defendants submitted fraudulent documents in the state court foreclosure proceeding because Plaintiff "satisf[ied] the alleged debt" in 2014 (Dkt. No. 1 at 4); and (3) that the state court proceedings were improper because the prosecuting parties did not have standing to pursue foreclosure and/or eviction (Dkt. No. 1 at 8, 15, 20).

#### 1. Forged Documents

Plaintiff purports to bring claims for fraud based on the allegedly forged mortgage, note, and loan modification agreement. (Dkt. No. 1, Attach. 1.) This claim "might survive *Rooker-Feldman* if the fraudulent conduct alleged did not lie at the core of the very loan agreement that was not only found valid in state court but was enforced by its judgment." *Desir v. Florida Capital Bank, N.A.*, 377 F. Supp. 3d 168, 173 (E.D.N.Y. 2019). "[A]ttacking the very contract enforced by the state court as fraudulent is a claim that cannot be stated independently of the prior state court judgment, thus *Rooker-Feldman* bars it." *Desir*, 377 F. Supp. 3d at 173-74; *see also Done*, 2011 WL 1260820, at *6 (*Rooker-Feldman* doctrine barred plaintiff's claims that were "entirely dependent on the loan in question being invalid, which ha[d] already been

resolved against plaintiff in the state court [foreclosure] proceeding"); *Talley*, 2018 WL 4185705, at *5 (holding that the *Rooker-Feldman* doctrine barred the plaintiff's claim of "'deceptive practices and fraud' at the origination of the mortgage . . [,which was] in contravention of the state court judgment of foreclosure and state court's acceptance of the validity of the mortgage documents that formed the basis for that judgment.").

"Moreover, [P]laintiff's allegation that [D]efendants engaged in fraudulent conduct by presenting the state court with [an] allegedly . . . 'forged' document does not save [his] proposed fraud claims because '[i]f the court were to accept the plaintiff's claim that the loan documents were forged, the court's ruling would necessitate a finding that the [j]udgment of [f]oreclosure and [s]ale were erroneously entered, and thus, void [which] . . . is precisely the result that the *Rooker-Feldman* doctrine seeks to avoid.'" *Gifford*, 2019 WL 2912489, at *8 (quoting *Ashworth v. Boggio*, 15-CV-0948, 2016 WL 4398958, at *5 (E.D.N.Y. July 26, 2016) (Report & Recommendation), *adopted at*, 2016 WL 4399311 (E.D.N.Y. Aug. 15, 2016); *accord Ward v. Bankers Tr. Co. of California, N.A.*, 09-CV-1943, 2011 WL 1322205, at *6-7 (E.D.N.Y. Mar. 29, 2011) (holding that plaintiff's fraud claims based on allegations of "forged documents" being presented and relied upon in the underlying state foreclosure and holdover actions were barred by the *Rooker-Feldman* doctrine because a ruling in her favor "would effectively declare the state court judgments of foreclosure and eviction fraudulently procured and thus void"); *Swiatkowski*, 745 F. Supp. 2d at 166 (plaintiff's claims that a state court foreclosure judgment was obtained using fraudulent documents barred by *Rooker-Feldman*)).

As a result, I recommend dismissal of these claims to the extent that they are based on the allegedly forged loan documents.

### 2. Fraud in Documents Submitted

To the extent that Plaintiff requests the federal court to grant him title to his property because the foreclosure or eviction judgments were obtained fraudulently, *Rooker-Feldman* bars Plaintiff's claim. *Vossbrinck*, 773 F.3d at 427. In addition, Plaintiff's request for a "stay of the sale and eviction" (Dkt. No. 1 at 8) is also barred because it cannot be stated independently of the prior state court judgment. *Desir*, 377 F. Supp. 3d at 173-74.

To the extent that Plaintiff is "seek[ing] damages from Defendants for injuries [Plaintiff] suffered from their alleged fraud" those claims are not barred by the *Rooker-Feldman* doctrine because the adjudication of those claims "does not require the federal court to sit in review of the state court judgment." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014); *accord Sykes v. Mel S. Harris and Assoc. LLC*, 780 F.3d 80, 94-95 (2d Cir. 2015) ("[C]laims sounding under FDCPA, RICO, and state law speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments."); *see also Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) (reversing the district court's judgment and holding that the "plaintiffs' suit is not barred by *Rooker-Feldman* because the [complaint] seeks damages for injuries suffered as a result of [the] defendants' alleged fraud and does not attempt to reverse or undo a state court judgment."); *Hylton*, 338 F. Supp. 3d at 276 (holding that the plaintiff's fraud in the concealment claim was not barred by the *Rooker-Feldman* doctrine where plaintiff alleged that defendant did not disclose that plaintiff's note would be scrutinized and the plaintiff sought monetary damages); *Pennicott v. JPMorgan Chase Bank, N.A.*, 16-CV-3044, 2018 WL 1891312, at *4 (S.D.N.Y. Apr. 18, 2018) ("[p]laintiff's claim for fraud in the concealment alleges she suffered damages because defendants concealed the fact that the mortgage loan was securitized"; such claims are

not barred by *Rooker-Feldman*, because they "do not require a ruling that the foreclosure was improper"); *Limtung v. Wells Fargo Bank, N.A.*, 16-CV-0100, 2017 WL 2781543, at *2 n.3 (E.D.N.Y. June 26, 2017) (collecting cases) ("Courts in this circuit have . . . held that *Rooker-Feldman* does not bar claims where, as here, a plaintiff alleges fraud and 'seeks damages equivalent to the value' of a foreclosed property without seeking to reverse the state court judgment through a return of the foreclosed property itself."); *Toohey v. Portfolio Recovery Assoc., LLC*, 15-CV-8098, 2016 WL 4473016, at *4 (S.D.N.Y. Aug. 22, 2016) (holding that "[b]ecause [the plaintiff] does not seek to undo the state court judgment through this federal action, but merely seeks damages based on Defendants' alleged independent wrongful conduct, the *Rooker-Feldman* doctrine does not apply, and Defendants' motions on this ground are denied."), *reconsideration denied*, 2017 WL 2271548, at *4 (May 12, 2017).[6]

---

[6] *But see Fiorilla v. Citigroup Global Markets, Inc.*, 771 F. App'x 114, 115 (2d Cir. 2019) (holding that (1) the plaintiff "could not circumvent the *Rooker-Feldman* bar by alleging that the state court judgment was fraudulently obtained," and (2) where the plaintiff's fraud claim is "based upon the fraud perpetrated upon the state court" and the only damage that he identified "from defendants' alleged fraud comes from the unfavorable state court judgment . . . his fraud claim 'invite[s] . . . review and rejection of that judgment,' which is precisely what *Rooker-Feldman* bars."); *Charles v. Levitt*, 716 F. App'x 18, 22 (2d Cir. 2017) (holding that the *Rooker-Feldman* doctrine barred the plaintiff's fraud claims because although he sought damages, the damages that he sought were "aimed at compensating him for the potential loss of the Property. The . . . complaint [was] not fairly read to demand any other damages; instead, it manifest[ed] a singular focus on allegedly wrongful actions related to the state court's" judgment); *Rockwood v. Cenlar FSB,* 17-CV-10153, 2018 WL 2122820, at *3 (S.D.N.Y. May 8, 2018) (holding that "plaintiff's claims for fraud against [defendants] essentially dispute the validity of the foreclosure action by challenging MER's title to the mortgage note and the fairness of the state court proceedings . . . [because] deciding those claims would require a ruling that the foreclosure was improper."); *Boothe v. Rossrock Funds II LP*, 16-CV-0900, 2017 WL 2271360, at *6 (E.D.N.Y. May 23, 2017) (finding that the court lacked subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine where the relief that the plaintiff sought included, *inter alia*, "to stay all proceedings in state court."); *Francis v. Nichols*, 16-CV-1848, 2017 WL 1064719, at *4-6 (S.D.N.Y. Mar. 21, 2017) (finding that the court lacked subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine where the relief that the plaintiff sought included expenses defending the foreclosure action, the cloud on title created by the foreclosure action, emotional distress, and the auction of his home).

13

As a result, I recommend that these claims be accepted for filing to the extent that they seek damages and I recommend dismissal to the extent that they seek a stay of the state court judgments or return of title.

### 3. Standing

"*Rooker-Feldman* bars claims that ask a court to find a defendant lacked standing to pursue foreclosure in a prior state court action, because such claims require a court to sit in review of the state court judgment." *Pennicott*, 2018 WL 1891312, at *3 (citing *Francis v. Nichols*, 16-CV-1848, 2017 WL 1064719, at *4 (S.D.N.Y. Mar. 21, 2017)); *see also Gifford*, 2019 WL 2912489, at *7 (dismissing pursuant to the *Rooker-Feldman* doctrine, the plaintiff's claims that "her note and mortgage were unlawfully assigned and, thus, the state court foreclosure judgment was fraudulently obtained and that [the defendants], therefore, had no right to collect on her note or to take possession of the Property.").

As a result, I recommend dismissal of these claims to the extent that they allege Defendants lacked standing in the state court proceedings.

### B. Second and Third Claims (Fair Debt Collection Practices Act)

Plaintiff brings claims against Defendants pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. for collecting on a mortgage loan that was fraudulently obtained and presenting fraudulent documents to the state court in support of the foreclosure. Construed liberally, Plaintiff once again alleges that (1) that the original mortgage, note, and loan modification agreement were forged (Dkt. No. 1 at 11, 13, 15; Dkt. No. 1, Attach. 1); (2) that Defendants submitted fraudulent documents in the state court foreclosure proceeding because "the alleged debt was paid, discharged" before the foreclosure proceeding (Dkt. No. 1 at

11, 13); and (3) that the state court proceedings were improper because the prosecuting parties did not have standing to pursue foreclosure and/or eviction (Dkt. No. 1 at 8, 15).

For the reasons set forth above in Part IV.A.1. of this Order Report-Recommendation, I recommend dismissal of these claims to the extent that they are based on the allegedly forged loan documents.

For the reasons set forth in Part IV.A.2. of this Order Report-Recommendation, I recommend that these claims be accepted for filing to the extent that they seek damages and I recommend dismissal to the extent that they seek a stay of the state court judgments or return of title.

For the reasons set forth above in Part IV.A.3. of this Order Report-Recommendation, I recommend dismissal of these claims to the extent that they allege Defendants lacked standing in the state court proceedings.

### C. Fourth Claim (Breach of Contract)

Plaintiff brings a claim of breach of contract alleging that the "original note must be produced and not a forged and fraudulently created copy having the names copied and pasted onto it." (Dkt. No. 1 at 16.) Plaintiff also argues that Defendants breached the contract by using the allegedly forged documents in the state court eviction and holdover proceedings. (*Id.* At 16-17.) In addition, Plaintiff alleges that he was "tricked into signing [his house] over to a fraudulent lending institution, an unconscionable process that is nothing more than a cognovit or contingent-void note." (*Id.* At 17.)

### 1. Forged Documents

For the reasons set forth above in Part IV.A.1. of this Order Report-Recommendation, I recommend dismissal of these claims to the extent that they are based on the use of allegedly forged loan documents in the state court proceedings.

### 2. Unconscionability

Plaintiff's allegations that there was an "unconscionable process" are barred pursuant to the *Rooker-Feldman* doctrine.[7] The injuries that Plaintiff appears to complain of in connection with his unconscionability claim are the enforcement of the mortgage contract–the foreclosure itself–and a ruling for Plaintiff on this issue would require this Court to review the judgment rendered in the foreclosure action. *See Hylton*, 338 F. Supp. 3d at 277 (dismissing the plaintiff's unconscionable contract claim pursuant to the *Rooker-Feldman* doctrine where the plaintiff alleged that she was "forced, tricked, and misled into parting with [her] property").

As a result, I recommend dismissal of Plaintiff's breach of contract claim.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05

---

[7] Even assuming *arguendo* that the *Rooker-Feldman* doctrine does not bar this claim, the Complaint's factual allegations are not sufficient to make out an unconscionable contract claim. Plaintiff has not pled facts demonstrating that any provision in the contract is substantive unconscionable. "An unconscionable contract is one which 'is so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Mayagüez S.A. v. Citigroup, Inc.*, 16-CV-6788, 2018 WL 1587597, at *12 (S.D.N.Y. Mar. 28, 2018) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988)). Plaintiff has not pointed to any term of the contract (mortgage, note or loan modification agreement) that is unreasonable "in like of the [relevant] mores and business practices." *Mayagüez S.A.*, 2018 WL 1587597, at *12.

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[8]

I recommend that Plaintiff be granted leave to amend his Complaint. *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 206 (2d Cir. 2019) (summary order) (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017)) (holding that where the Court lacks subject matter jurisdiction, dismissal of the complaint "should be without prejudice.").

If Plaintiff chooses to file an amended complaint, he must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named Defendants in the deprivations alleged in sufficient detail to establish that they were tangibly connected to those

---

[8] *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999), that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim" is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

17

deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI. SUMMARY, RECOMMENDATION, AND ORDER

Having reviewed Plaintiff's IFP application, I find that without a completed affidavit detailing the basis for his claim that he is unable to pay the applicable filing fee, he does not meet the requirements for IFP status. Accordingly, Plaintiff's IFP application is denied without prejudice to refiling.

Turning to the merits of Plaintiff's Complaint, I recommend that Plaintiff's Complaint be dismissed without prejudice with regard to (1) the Fourth Claim, and (2) the First, Second, Third, Fifth, and Sixth Claims to the extent that they allege (a) forgery of the loan documents, (b) fraud and seek relief other than damages, and (c) that the parties in the state court proceeding lacked standing. Without expressing an opinion as to whether Plaintiff's First, Second, Third, Fifth, and Sixth Claims to the extent that they allege fraud and seek monetary damages, can withstand a properly filed motion to dismiss or summary judgment, I recommend that those claims be accepted for filing.

**WHEREFORE**, based on the findings above, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED** without prejudice to refiling. Within thirty days of the date of this Order Report-Recommendation, Plaintiff is directed to either (1) pay the requisite $400 filing fee, or (2) submit

a renewed and complete motion to proceed *in forma pauperis*. Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be accepted for filing with respect to Plaintiff's First, Second, Third, Fifth, and Sixth Claims to the extent they allege fraud and seek monetary damages; and it is further

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's (1) Fourth Claim, and (2) First, Second, Third, Fifth, and Sixth Claims to the extent that they allege (a) forgery of the loan documents, (b) fraud and seek relief other than monetary damages, and (c) that the parties in the state court proceeding lacked standing, pursuant to the *Rooker-Feldman* doctrine because the Court lacks subject matter jurisdiction over these claims; and it is further

**RECOMMENDED** that, in the event Plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect to Plaintiff's First, Second, Third, Fifth, and Sixth Claims to the extent they allege fraud and seek monetary damages.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

---

[9] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[10]

Dated: August 29, 2019
Binghamton, New York

_____
Miroslav Lovric
U.S. Magistrate Judge

---

[10] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).